UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MERI PINELLI, individually and on behalf of all similarly situated persons, | * * * | CASE NO: |
| | * | JUDGE: |
| Plaintiffs | * * | MAGISTRATE: |
| v. | * * | |
| LUMBER LIQUIDATORS, INC | * * | |
| Defendant | * | REQUEST FOR JURY TRIAL |

**************************************

## PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff, Meri Pinelli, individually and on behalf of all others similarly situated (the "class", as more fully defined below), allege the following against defendant Lumbar Liquidators Holdings, Inc., upon personal knowledge as to themselves and their own acts and as to all other matters upon information and belief, based upon, among other things, their attorney's investigation.

### I. INTRODUCTION

1.  This is a proposed class action brought by Plaintiffs on behalf of themselves and the below-defined Class against defendant to obtain damages arising from and relating to their purchase and installation of defendant' Chinese wood flooring materials ("Chinese Flooring").

2.  This action arises out of defendant scheme to import into the United States, and falsely warrant, advertise and sell, Chinese Flooring that fails to comply with relevant and applicable formaldehyde standards, which renders the Chinese Flooring defective. In particular, and in contrast to its direct representations to the contrary, defendant manufacturers, sells, and distributes, Chinese Flooring that emits and off-gases excessive levels of formaldehyde, which is categorized as a known human carcinogen by the United States National Toxicology Program and the International Agency for Research on Cancer.

3.  Indeed, contrary to defendant's repeated, detailed representations that its flooring complies with strict formaldehyde standards on its products labels, website, and elsewhere, the toxic formaldehyde emissions from the company's Chinese Flooring products are multiple times the maximum permissible limits set by those standards at the time of purchase.

1

4. Defendant's illegal behavior with respect to its manufacturing, marketing, and sale of Chinese Flooring has caused Plaintiffs and other Class members to suffer direct financial harm. Plaintiffs' purchases, by failing to comply with the plain warranties of the Chinese Flooring, is markedly less valuable because of its elevated level of formaldehyde. Plaintiffs would have paid significantly less, if they had purchased it at all, had they known that the products contained elevated levels of the toxin formaldehyde.

5. Plaintiffs asserts claims individually and on behalf of the other members of the proposed Class for breach of express and implied warranty; violation of state Consumer Protection/Deceptive Practices acts; and redhibition arising from Defendant' scheme to import and sell the Chinese Flooring products at issue here.

## II. JURISDICTION AND VENUE

6. The Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d). The aggregated claims of the individual Class members exceed the sum or value of $5,000,000.00, exclusive of interest and costs, and this is a case in which Plaintiff and the other Class Members, on one hand, and Lumber Liquidators, on the other, are citizens of different states.

7. This Court has jurisdiction over Lumber Liquidators because the Company maintains its principal headquarters in Virginia, is registered to conduct business in Louisiana, and has sufficient minimum contacts with Louisiana. Lumber Liquidators intentionally avails itself of the Louisiana consumer market through the promotion, sale, marketing, and distribution of its products to Louisiana residents.

8. Venue is proper in this District under 28. U.S.C. §1391 (a)-(d) because, among other things, substantial parts of the events or omissions giving rise to the claims occurred in the District and/or a substantial part of the property that is subject of the action is situated in the District.

## III. PARTIES

9. Plaintiff, Meri Pinelli, is, and at all relevant times herein, a major individual domiciled in Metairie, Parish of Jefferson, State of Louisiana. In or about April 2013, the Mrs. Pinelli purchased St. James Vintner Reserve Laminate Flooring directly from Defendant. This flooring was manufactured in China. At the time of purchase, Lumber

2

Liquidators falsely represented and warranted the flooring to be compliant with strict formaldehyde standards.  Mrs. Pinelli relied on Lumber Liquidators' misrepresentations regarding its compliance with U.S. laws and regulations when deciding to purchase flooring and as a result, paid more for this product than they would have and/or would not have purchased the product but for Defendant's deceptive conduct.

10.     Defendant, Lumber Liquidators, Inc., is a Delaware corporation with its principal executive offices located at 3000 John Deere Road, Toano, VA 23168.

11.     Lumber Liquidators is one of the largest specialty retailers of hardwood flooring in the United States selling primarily to homeowners directly or to contractors action on behalf of homeowners through its extensive network of retail stores nationwide.

12.     Lumber Liquidators has mills in, and buys many of its source wood flooring material from, China.  The company recently established a representative office in Shanghai, China and assumed "direct control" of its entire product sourcing in China (through its headquarters in China).

## IV FACTUAL BACKGROUNG

13.     Lumber Liquidators was created in Massachusetts in 1993 by Tom Sullivan.  The Company's first store opened in 1996 in West Roxbury, Massachusetts.  Eight months later, a second store opened in Hartford, Connecticut and from they're the Company expanded exponentially.

14.     Lumber Liquidators carries solid and engineered hardwood, laminate flooring, bamboo flooring, cork flooring and resilient vinyl flooring, butcher blocks, molding, accessories, and tools.

15.     Lumber Liquidators represents that it negotiates directly with lumber mils, eliminating the middlemen and passing the saving on to its customers.  The company also represents and warrants that it is "environmentally conscientious" and "only purchases from suppliers who practice sustainable harvesting, which allows forests to heal and re-grow faster." But as described in more detail below, Lumber Liquidators low prices are due in part to its business practice of selling inexpensive, largely Chinese-sourced products that violate formaldehyde standards and Lumber Liquidators' failure to warn the public of the high formaldehyde levels in its products.

16. Contrary to its representations to Plaintiffs and other Class members, Lumber Liquidators has knowingly and intentionally engaged in a scheme to source, manufacture, sell and distribute falsely advertised Chinese Flooring that emits excessively high levels of formaldehyde.

17. Formaldehyde (CH2O) is a naturally occurring chemical that can be synthesized and used in certain industrial processes.

18. Formaldehyde is classified as a volatile organic compound ("VOC"), which is a chemical that becomes a gas at room temperature. It is listed as a known human carcinogen by the National Toxicology Program and the International Agency for Research on Cancer and is associated with myriad other adverse medical conditions even in short term exposure, including asthma and rheumatoid arthritis.

19. According to the U.S. Occupational Safety and Health Administration (OSHA):

> The concentration of formaldehyde that is immediately dangerous to life and health is 100 ppm. Concentrations above 50 ppm can cause severe pulmonary reactions within minutes. These include pulmonary edema, pneumonia, and bronchial irritation, which can result in death. Concentrations above 5 ppm readily cause lower airway irritation characterized by cough, chest tightness and wheezing.
>
> Long-term exposure has been linked to an increased risk of cancer of the nose and accessory sinuses, nasopharyngeal and oropharyngeal cancer, and lung cancer in humans.

20. Wood flooring can contain formaldehyde because formaldehyde is often used in the adhesives and resins used to make engineered wood floors. Formaldehyde can be released into the air from wood flooring materials.

21. According to the Consumer Product Safety Commission ("CPSC"), pressed-wood and wood-based products, especially those containing urea-formaldehyde ("UF") resins, may be "a significant formaldehyde source."

22. Many, if not all, of Lumber Liquidators' Chinese Flooring products contain UF or other formaldehyde resins. For example, the Material Safety Data Sheet for Lumber Liquidators' Morning Star Bamboo Flooring states: "This product is composed of bamboo fibers bonded together with urea formaldehyde (UF) resins." UF makes up 10-11% of the product.

23. Chinese-sourced wood products (including Lumber Liquidators' Chinese Flooring) are particularly associated with excess formaldehyde levels.

24. Plaintiffs understand that it is possible to manufacture pressed wood products with different mixtures of UF resins and thus a range of formaldehyde emissions. Some pressed wood products have low, or no, added formaldehyde. However, such low-emission products may have longer curing times; lower manufacturing throughput, and higher production costs. On information and belief, these costs are higher than levels Chinese mills are accustomed to incurring in producing inexpensive laminate flooring of the type sold by Lumber Liquidators.

25. Chinese regulations governing formaldehyde in wood products are virtually non-existent. As a result, wood sourced in China is not subject to the strict environmental regulations that would govern such wood products manufactured in the United States.

26. The United States statute that governs permissible formaldehyde emissions, the Formaldehyde Standards for Composite Wood Products Act of 2010, 15 U.S.C. §2697 ("The Formaldehyde Standards Act"), was signed into law on July 7, 2010. This law adopted the standards established by CARB as a nationwide standard.

27. Lumber Liquidators' marketing materials, including the Company's website, specifically represent to consumers that the Company's Chinese Flooring products comply with the formaldehyde emission regulations propounded by California Air Resources Board ("CARB") and indeed comply with even stricter European Union ("EU") formaldehyde standards:

> **All laminates and engineered flooring products sold by Lumber Liquidators are purchased from mills whose production method has been certified by a third party certifier approved by the State of California to meet CARB standards**. The scope of the certification by the third party certifier includes the confirmation that the manufacturer has implemented the quality systems, process controls, and testing procedures outlined by CARB and that their products conform to the specified formaldehyde emission limits. The third party certifier also provides ongoing oversight to validate the manufacturer' compliance and manufacturers must be periodically re-certified.
>
> Though it currently applies to only products sold in California, **Lumber Liquidators made a decision to require all of our suppliers to comply with CARB regardless of whether we intended to sell the products in California or any other state/country. In addition, our suppliers manufacture their products in accordance with the European standard, which has stricter guidelines than California** [sic].
>
> In addition to the CARB requirements, **Lumber Liquidators regularly selects one or more products from each of its suppliers and submits them for independent third party lab testing**. This is done as a monitoring activity to validate ongoing compliance.[1]

---

[1] http://www.lumberliquidators.com/ll/flooring/Flooring101-formaldehyde-what-it-is.

## V. CLASS ACTION ALLEGATIONS

28.     Plaintiffs bring this action pursuant to Rules 23(a), 23 (b)(2) and 23(b)(3) individually and on behalf of all others similarly situated.

29.     The Class that Plaintiffs seeks to represent is defined as:

> All persons and entities in Louisiana who purchased and installed wood flooring from Lumber Liquidators, Inc. either directly or through an agent, that was sourced, processed, or manufactured in China.

Excluded from the Class is Lumber Liquidators, it affiliates, employees, officers, and directors, persons or entities that distribute or sell Lumber Liquidators flooring, the Judge(s) assigned to this case an the attorneys of record in this case.

30.     Plaintiffs do not assert claims in this action for personal injuries caused by the formaldehyde exposure through the Chinese Flooring in questions here.  Rather, Plaintiffs, individually and on behalf of other class members, seek solely economic relief as a result of the purchase of Lumber Liquidators' Chinese Flooring products.

31.     The members of the Class are so numerous that joinder of all members would be impracticable.  The proposed class likely includes not less than thousands of members dispersed across Louisiana.  The precise number can be ascertained through discovery, which will include records of Defendant's sales, its warranty service and other records and documents.

32.     There are common questions of law and fact that predominate over any questions affecting only individual class members.  These common legal and factual questions, include, but are not limited to:

   a.   Whether Lumber Liquidators' Chinese Flooring Products emit excessive levels of formaldehyde;
   b.   Whether Lumber Liquidators represented and warranted that its Chinese Flooring products complied with their label descriptions.
   c.   Whether Lumber LIquidiators breached its express and implied warranties to Plainitff and other class members with respect to its Chinese Flooring products;
   d.   Whether, as a result of Lumber Liquidators' conduct, Plainitff and other members of the class have suffered damage; and if so, the appropriate measure of damages to which they are entitled; and
   e.   Whether, as a result of Lumber Liquidators' misconduct, Plainitff and other class members are entitled to equitable relief and/or other relief, and if so, the nature of such relief.

33.     Plaintiff's claims are typical of the claims of other class members.  Plainitffs and each of the other class members have been injured by the same wrongful practices of

6

Lumber Liquidators. Plaintiff's claims arise from the same practices and conduct that give rise to other Class members' claims and are based on the same legal theories.

34. Plaintiff will fully and adequately assert and protect the interests of the other Class members. In addition, Plaintiff have retained class counsel who are experienced and qualified in prosecuting class action cases similar to this one. Neither Plaintiffs nor their attorneys have any interests contrary to or conflicting with other Class members' interest.

35. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the other class members' claims is economically infeasible and procedurally impracticable. While the damages sustained by class members in the aggregate are substantial, the individual damages incurred be each class member are too small to warrant the expense of individual suits.

## VI. CLAIMS ALLEGED
### COUNT 1
### Violation of Magnuson-Moss Warranty Act

36. Plaintiffs and the Class incorporate by reference each preceding and following paragraph as though fully set forth at length herein.

37. Plaintiff brings this claims individually and on behalf of the other class members against Lumber Liquidators.

38. Plaintiff and other class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 (3).

39. Lumber Liquidators is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §2301 (4)-(5).

40. Lumber Liquidators flooring purchased separate from the initial construction of the structure constitutes a "consumer product" within the meaning of 15 U.S.C. §2301 (1).

41. Lumber Liquidators' express warranties and written affirmations of fact regarding the nature of the flooring, including that the flooring was free of defects and was in compliance with CARB and EU formaldehyde standards and all other applicable laws and regulations constitute written warranties within the meaning of 15 U.S.C. §2301 (6).

42. Lumber Liquidators breached their warranties by:

    a. Manufacturing, selling and/or distributing flooring that exceeds the CARB and EU formaldehyde standards;

      b.      Manufacturing, importing, selling, and/or distributing flooring that fails to comply with all applicable laws and regulations; and

      c.      Refusing to honor the express warranty by refusing to properly repair or replace defective flooring.

43. Lumber Liquidators' breach of its express warranties deprived Plaintiff and the other class members of the benefits of their bargains.

44. The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000 exclusive of interest and cost, computed on the basis of all claims to be determined in this lawsuit. Plaintiff, individually and on behalf of the other Class Members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial.

45. Plaintiff, individually and on behalf of the other class members, have notified Defendant of its breach of written warranties and Defendant has failed to adequately cure those breaches. As a direct and proximate result of Defendant's breaches of its written warranties, Plaintiffs and other class members sustained damages in an amount to be determined at trial. Defendant's conduct damaged Plaintiff and other class members, who are entitled to recover damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, rescission, and/or other relief as appropriate.

### COUNT II
### REDHIBITION

46. Plaintiff repeats each and every allegation contained in the prior paragraphs of this Complaint.

47. Defendant, as manufacturer of the defective flooring, is responsible for damages caused by the failure of its product to conform to well-defined standards.

48. In particular, the flooring contains a vice or defect which rendered it useless or its use so inconvenient that a reasonable buyer would not have purchased it.

49. Defendants manufactured, sold and promoted the flooring and placed the flooring into the stream of commerce. Under Louisiana law, the seller and manufacturer warrants the buyer against redhibitory defects or vices in the things sold. La. C.C.P. Art. 2520.

50. The flooring as sold and promoted by Defendants possessed a redhibitory defect because it was not manufactured and marketed in accordance with industry standards

8

and/or was unreasonably dangerous as described above, which rendered the flooring useless or its use so inconvenient that it must presumed that a buyer would not have bought the flooring had she known of the defect.

51. Pursuant to La. C.C.P. Art. 2520, Plaintiff is entitled to obtain a rescission of the sale of the subject product.

52. The flooring alternatively possesses a redhibitory defect because the flooring was not manufactured and marketed in accordance with industry standards and/or was unreasonably dangerous as described above, which diminished the value of the flooring so that it must be presumed that a reasonable buyer would still have bought the flooring, but for a lesser price, had the redhibitory defect been disclosed. In this instance, Plaintiff is entitled to a reduction of the purchase price.

53. As the manufacturer of the flooring, under Louisiana law, Defendants are deemed to know that the flooring contained a redhibitory defect. La. C.C.P. Art. 2545. Defendant is liable as a bad faith seller for selling a defective product with knowledge of a defect and thus is liable to Plaintiff for the price of the subject product, with interest from the purchase date, as well as reasonable expenses occasioned by the sale of the subject product, and attorney's fees.

## COUNT III
### Louisiana Products Liability Act

54. Plaintiff, on behalf of herself and the Class Members, repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if fully copied herein.

55. The subject flooring is unreasonably dangerous for the following reasons:

   a. It is unreasonably dangerous in construction and/or composition as provided in R.S. 9:2800.55
   b. It is unreasonably dangerous in design as provided in R.S. 9:2800.56;
   c. It is unreasonably dangerous because an adequate warning about the product was not provided as required by R.S. 9:2800.57;
   d. It is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.

56. The characteristics of the product that render it unreasonably dangerous under R.S. 9:2800.55 et seq., existed at the time the product left the control of the manufacturer or resulted from a reasonably anticipated alteration or modification of the product.

57. At all times material hereto, Defendants were engaged in the business of manufacturing, assembling, promoting, advertising, selling and distributing Defective flooring in the United States.

58. Defendants knew and expected for the defective flooring to eventually be sold to and installed by purchasers of the flooring, including Plaintiff and Class Members; consequently, Plaintiff and Class Members were expected users of the product, which Defendant manufactured.

59. The defective flooring reached Plaintiff without substantial change in its condition from the time of completion of manufacture by Defendant.

60. The Defects in the flooring could not have been contemplated by any reasonable person expected to install and/or purchase the defective flooring, and, therefore, presented an unreasonably dangerous situation for expected users of the defective flooring even though the defective flooring is used by expected users in a reasonable manner.

61. Defendants should have reasonably foreseen that the dangerous conditions caused by the defective flooring would subject Plaintiff and Class Members to harm resulting from the defective flooring.

62. Plaintiff and Class Members have used the defective flooring reasonably and as intended, to the fullest degree possible given the defective nature of the flooring, and, nevertheless, have suffered damages through no fault of their own.

63. As a direct result of Defendants' design, manufacture, assembly, marketing, and sales of the defective flooring, Plaintiff and the Class have suffered and will continue to suffer the damages including but not limited to (i) reimbursement of out of pocket costs, for among other things, removing the defective flooring, purchasing new flooring and installing new flooring, and (ii) diminution in resale value of the structure.

## COUNT IV
### Violation Unfair Trade Practices and Consumer Protection Law
### LA. R.S. 51:1401

64. As a direct and proximate result, Defendant should be ordered to make restitution to Plaintiffs and Class Members of all monies that have been expended by them, which was obtained by Defendant's utilization of deceptive acts or practices.

65. Defendant was under a duty to Plaintiffs and the Class Members to disclose and warn of the defective nature of the subject flooring because:Defendant was in a superior position to know the true state of the facts about the hidden defect in the subject flooring;

   a. Defendant made disclosures about the safety and quality of the subject flooring while not revealing their true defective nature;

   b. Defendant fraudulently and affirmatively concealed the defective nature of the subject flooring from the Plaintiffs and the Class Members.

66. The facts concealed and/or not disclosed by Defendant to Plaintiffs and the Class Members were material facts that a reasonable person would have considered to be important in deciding whether or not to purchase and/or operate the subject flooring.

67. Defendant intentionally concealed and/or failed to disclose the true nature of the problems with the subject flooring for the purpose of inducing Plaintiffs to act thereon, and Plaintiffs justifiably acted or relied upon, to their detriment, the concealed and/or non-disclosed facts as evidenced by their purchase and installation of the subject flooring.

68. Defendant has not adequately notified past purchasers or warned future purchasers of the defect, and has not taken appropriate action to recall, buy back their defective products.

69. Defendant practiced and continues to practice "unfair or deceptive acts or practices" or "unfair methods of competition," as defined in LA. R.S. 51:1401, et seq, by:

   a. Representing that the subject flooring has sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, that they do not have, as described above;

   b. Representing that the subject flooring is of a particular standard, quality, or grade though in fact were of another;

   c. Advertising the subject flooring, with the intent not to sell them as advertised, as described above;

   d. Engaging in fraudulent or deceptive conduct, which created a

> likelihood of confusion or of misunderstanding among the general public, including Plaintiffs and the Class Members, regarding the characteristics of the subject flooring as described above.

70. Defendant violated Unfair Trade Practices and Consumer Protection Law by practicing the "unfair or deceptive acts or practices," and "unfair methods of competition," described above.

71. Pursuant to LA. R. S. 51:1401, et seq, Plaintiffs is entitled to recover, and hereby seek:

    a. Actual damages;
    b. Three times actual damages;
    c. Costs and reasonable attorney fees;
    d. any additional relief the Court deems necessary or proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf all others similarly situated, respectfully requests that this Court enter a judgment against Defendants and in favor of Plaintiffs and the Class, and grant the following relief:

A. Determine that this action may be maintained as a Class action and certify it as such under Rule 23(b)(3), or alternatively certify all issues and claims that are appropriately certified; and designate and appoint Plaintiffs as Class and Subclass Representative and Plaintiffs' chosen counsel as Class Counsel;

B. Declare, adjudge and decree the conduct of Defendant as alleged herein to be unlawful, unfair and/or deceptive, and enjoin any such future conduct;

C. Award Plaintiffs and Class members actual, compensatory damages, or, in the alternative, statutory damages, as proven at trial;

D. Award Plaintiffs and the Class members exemplary damages in such amount as proven;

E. Award Plaintiffs and the Class members their reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest; and

F. Award Plaintiffs and the Class members such other further and different relief as the case may require or as determined to be just, equitable, and proper by this Court.

## JURY TRIAL DEMAND

Plaintiffs request a trial by jury on the legal claims, as set forth herein.

Dated: March 10, 2015               Respectfully submitted,

**Becnel Law Firm, LLC**
By: /s/ Daniel E. Becnel, Jr.
Daniel E. Becnel, Jr.(2926)
Matthew Moreland (24567)
Salvadore Christina, Jr. (27198)
P.O. Drawer H
Reserve, LA 70084
Telephone: 985.536.1186
Facsimile: 985.536.6446
dbecnel@becnellaw.com
mmoreland@becnellaw.com
schristina@becnellaw.com

**COUNSEL FOR PLAINTIFF**

13